UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARIE-ELISE AUGUSTE,

Plaintiff,

-against-

NYC HUMAN RESOURCES ADMINISTRATION,

Defendant.

1:25-CV-3109 (LLS)

ORDER TO AMEND

LOUIS L. STANTON, United States District Judge:

Plaintiff Marie-Elise Auguste, who is proceeding *pro se*, brings this action asserting claims of retaliation and of employment discrimination. She sues her former employer, the New York City Human Resources Administration ("HRA"), and asserts claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981, the Age Discrimination in Employment Act of 1967 ("ADEA"), the Rehabilitation Act of 1973 ("Rehab Act"), the Americans with Disabilities Act of 1990 ("ADA"), the Family and Medical Leave Act of 1993 ("FMLA"), and the New York State and City Human Rights Laws ("NYSHRL" and "NYCHRL"). The Court understands Plaintiff's claims brought under Section 1981 as claims of federal constitutional equal-protection violations brought under 42 U.S.C. § 1983.[1]

By order dated September 17, 2025, the court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees.[2] For the reasons set forth below, the Court grants Plaintiff leave to file an amended complaint within 30 days of the date of this order.

[1] Plaintiff cannot pursue claims under Section 1981 against a state actor, such as the HRA; she may only seek such relief against a state actor under Section 1983. *Duplan v. City of New York*, 888 F.3d 612, 620-21 (2d Cir. 2018).

[2] In her IFP application, Plaintiff reveals what appears to be the name of her daughter, who seems to be a minor child, instead of referring to her daughter's name's initials, as required

## STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits—to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure ("Rule 8"), which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id*. But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action,"

---

by Rule 5.2(a)(3) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 5.2(a)(3). In an abundance of caution, the Court has directed the Clerk of Court to restrict public electronic access to Plaintiff's IFP application.

which are essentially just legal conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible—not merely possible—that the pleader is entitled to relief. *Id.* at 679.

**BACKGROUND**

Plaintiff alleges the following facts in her complaint[3]: She describes her race as Black and "Black (Afro Caribbean)," her color as "Black/Brown," her sex as female, her national origin as Haitian and, while she does not specify her religion, she states that she "was ordered to remove [her] cross from [her] cubicle area." (ECF 1, at 3-4.) She also asserts that she was born in 1969 and suffers from pancolitis, irritable bowel syndrome, ulcerative colitis, anxiety, post-traumatic stress disorder, depression, chronic pain, and other unspecified disabilities. (*Id.* at 4.)

Plaintiff states that she was employed by the HRA, in an unspecified position, at a location in Brooklyn, New York. Among the adverse employment actions that she alleges she suffered, she states that the HRA terminated her employment, did not accommodate her disability, retaliated against her, harassed her or created a hostile work environment, and that she "was treated differently comparatively to other employees." (*Id.* at 5.)

Plaintiff alleges that she "was unjustly and deliberately terminated on [January] 22, 2022" and that she "was not giv[en] the opportunity to request . . . a grievance." (*Id.*) She also alleges that, instead, she "was led to believe that [her] request for an extension of an existing RA was pending."[4] (*Id.*) Plaintiff further states that she "was force[d] to apply for FMLA" leave. (*Id.*)

---

[3] The Court quotes from the complaint verbatim. All spelling, grammar, and punctuation are as in the complaint unless noted otherwise.

[4] Plaintiff reference to an "RA" in her complaint may be a reference to a request that she made at her workplace for a reasonable disability accommodation and/or for an extension of a

Both of those requests were denied. (*Id.*) Plaintiff asserts that "[t]he people in charge lied and attempted to cover up the facts." (*Id.*) She also asserts that she has "a history of denial RA and harassment from the people in charge and the[ir] subordinates." (*Id.*)

**DISCUSSION**

Plaintiff's allegations seem to assert that Plaintiff suffered employment discrimination due to her religion, disabilities, and, possibly, due to her attempts to seek medical leave, but not due to her age. Thus, as discussed below, the Cout construes Plaintiff's complaint as asserting federal-law claims of discrimination, brought against the City of New York, under Title VII, the ADA, the Rehab Act, the FMLA, and under 42 U.S.C. § 1983, as well as claims of retaliation under those statutes, but not under the ADEA, because Plaintiff alleges nothing about age discrimination.[5]

**A. Claims against the HRA**

The Court dismisses Plaintiff's claims against the HRA and construes such claims as brought against the City of New York. As an agency of the City of New York, the HRA is not an entity that can be sued. N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Edwards v. Arocho*, 125 F.4th 336, 354 (2d Cir. 2024) ("A plaintiff cannot bring a claim against a municipal agency that does not have the capacity to be sued under *its municipal charter*."); *Beaman v. Parks*, No. 1:24-CV-10071 (MKV), 2026 WL 47302, at *2 (S.D.N.Y. Feb. 19, 2026) (the HRA is

---

previously granted disability accommodation. Plaintiff does not specify what type of accommodation she requested and/or was previously granted.

[5] The Court will not discuss, in this order, the merits of any claims that Plaintiff asserts under state law, including any claims asserted under the NYSHRL and the NYCHRL.

not a suable entity). The Court therefore dismisses Plaintiff's claims against the HRA for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). In light of Plaintiff's *pro se* status, however, the Court understands all of Plaintiff's claims as brought against the City of New York.

**B. Claims of discrimination under Title VII**

The Court must dismiss Plaintiff's claims of discrimination under Title VII, which prohibits an employer from discriminating against an employee or a potential employee because of that person's race, color, religion, sex, or national origin. *See* 42 U.S.C. §2000e-2(a). To state a disparate-treatment claim of employment discrimination under that statute, "a plaintiff must plausibly allege that (1) the employer took adverse employment action against [her], and (2) [her] race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015). The plaintiff "may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id.* at 87.

Plaintiff alleges nothing to suggest that the HRA's decision to terminate her (or any other alleged adverse employment action that it may have imposed upon her) had anything to do with her race, color, sex, or national origin. To the extent that Plaintiff alleges that she was discriminated against with respect to her religion—arising from being instructed to remove a cross that she had hung in her work cubicle—she does not allege any facts that would show that her religion was a motivating factor in any adverse employment action that she allegedly suffered, including her termination. The Court therefore dismisses Plaintiff's disparate-treatment claims of discrimination under Title VII for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii).

To the extent that Plaintiff is attempting to assert a religion-based hostile-work environment claim under Title VII with regard to the abovementioned cross having to be removed from her work cubicle, she also fails to state such a claim. This is so because Plaintiff has not alleged facts showing: "(1) that the harassment was sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment, and (2) that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (internal quotation marks and citation omitted). Thus, the Court also dismisses such a claim for the same reason. *See* § 1915(e)(2)(B)(ii).

The Court grants Plaintiff leave to file an amended complaint in which she alleges facts sufficient to state either type of claim under Title VII.

**C. Claims of discrimination under Title I of the ADA and under the Rehab Act**

The Court understands Plaintiff's complaint as asserting claims of disability-based employment discrimination under Title I of the ADA and under the Rehab Act. Title I of the ADA "prohibits employers from 'discriminat[ing] against a qualified individual *on the basis* of disability in regard to . . . the hiring, advancement, or discharge of employees.'"[6] *Natofsky v. City of New York*, 921 F.3d 337, 346 (2d Cir. 2019) (quoting 42 U.S.C. § 12112(a)). To state an "adverse action" claim of employment discrimination under Title I of the ADA, a plaintiff must allege that:

> (1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by [the] employer; (3) she was otherwise qualified to perform the essential functions of the job with or without

[6] For the purpose of claims of employment discrimination under the ADA, a "disability" is defined as: "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). The Rehab Act adopts the ADA's definition of "disability" by reference. *See* 29 U.S.C. § 705(20)(B).

> reasonable accommodation; (4) she suffered an adverse employment action; and (5) the adverse action was imposed because of her disability.

*Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015). To state a "failure to accommodate" claims under Title I of the ADA, a plaintiff must allege that:

> (1) [she] is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, [the employee] could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.

*Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 94 (2d Cir. 2015) (internal quotation marks and citation omitted). The causation standard for both of these claims under the ADA is a "but-for" standard; a plaintiff must allege that, but for her disability, the defendant would not have discriminated against her. *See Natofsky*, 921 F.3d at 347-53. The pleading standards are the same for both types claims under the Rehab Act, *see Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 1999) (the Rehab Act and the ADA "impose identical requirements" and courts should consider "these claims in tandem")—even the "but for" causation requirement is the same for such claims under the Rehab Act, *Natofsky*, 921 F.3d at 345-49.[7]

Even assuming that the HRA receives federal funding, which Plaintiff has not alleged, and assuming that she has alleged facts showing that she has a disability that is a protected characteristic under both the ADA and the Rehab Act, Plaintiff has not alleged facts sufficient to show, for the purposes of an "adverse action" claim under either statute, that she suffered an adverse employment action, including termination, because of her disability. Specifically, she does not allege facts sufficient to show that, but for her disability, she would not have suffered an adverse employment action, including termination. And with respect to any "failure to

[7] With respect to claims of employment discrimination under the Rehab Act, however, there is an additional requirement that a non-federal employer receive federal funding. *See Lyons v. Legal Aid Soc'y*, 68 F.3d 1512, 1514-15 (2d Cir. 1995) (quoting 29 U.S.C. § 794(a)).

accommodate" claim that Plaintiff asserts under either statute—assuming that she is indeed disabled and that the HRA had notice of that disability—because she does not specify her former position/duties and the reasonable accommodation that she requested, she does not allege facts sufficient to show that, but for the denial of that accommodation, she could perform the essential functions of her former position.

Accordingly, the Court dismisses these claims for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii). The Court grants Plaintiff leave to replead such claims in an amended complaint in which she alleges fact sufficient to state such claims.

**D. Claims under the FMLA**

The Court also understands Plaintiff's complaint as asserting claims under the FMLA arising from the HRA's alleged denial of what appears to be Plaintiff's request for medical leave. The FMLA provides that eligible employees are "entitled to a total of 12 workweeks of leave during any 12-month period" for any one of several reasons enumerated in that statute. 29 U.S.C. § 2612(a)(1). The FMLA covers, among other things, leave that is necessary "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." § 2612(a)(1)(D).

Generally, a plaintiff may assert two varieties of claims under the FMLA, claims of interference and claims of retaliation:

> In a general sense, an employee brings an "interference" claim when her employer has prevented or otherwise impeded the employee's ability to exercise rights under the FMLA. "Retaliation" claims, on the other hand, involve an employee actually exercising her rights or opposing perceived unlawful conduct under the FMLA and then being subjected to some adverse employment action by the employer. The two types of claims serve as *ex ante* and *ex post* protections for employees who seek to avail themselves of rights granted by the FMLA.

*Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 166 (2d Cir. 2017) (citations omitted).

Under this statute, an eligible employee is generally defined as "an employee who has been employed—(i) for at least 12 months by the employer with respect to whom leave is requested under [the FMLA]; and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A). As to claims of interference and retaliation under the FMLA, a plaintiff must allege that she is an eligible employee. *See Arroyo-Horne v. City of New York*, 831 F. App'x 536, 539 (2d Cir. 2020) (summary order) (interference and retaliation); *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016) (interference).

Plaintiff has not alleged facts showing that, for the purposes of her claims under the FMLA—those arising from her requesting and being denied medical leave—that such a request was made "[b]ecause of a serious health condition that ma[de] [her] unable to perform the functions of [her] position," § 2612(a)(1)(D), and that she was eligible for such FMLA leave while she was employed by the HRA. Thus, she does not state a claim under the FMLA. *Graziadio*, 817 F.3d at 424 (stating elements of FMLA interference claims); *see Arroyo-Horne*, 831 F. App'x at 539; *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004) (stating elements of FMLA retaliation claim). Accordingly, the Court also dismisses Plaintiff's claims under the FMLA for failure to state a claim on which relief may be granted, *see* § 1915(e)(2)(B)(ii), but grants Plaintiff leave to replead such claims in an amended complaint.

**E. Claims under 42 U.S.C. § 1983**

To the extent that Plaintiff asserts claims of equal-protection federal constitutional violations in the employment-discrimination context, under 42 U.S.C. § 1983, the Court must dismiss such claims. When a plaintiff sues a municipality, like the City of New York, under Section 1983, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality itself

caused the violation of the plaintiff's rights. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." (quoting *Monell v. Dept of Soc. Servs.*, 436 U.S. 658, 692 (1978))); *Cash v. Cnty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011). In other words, to state a claim under Section 1983 against a municipality, the plaintiff must allege facts showing: (1) the existence of a municipal policy, custom, or practice, and; (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (internal citations omitted). If there is no underlying constitutional violation, however, the Court need not examine whether there is such liability under Section 1983. *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006).

Plaintiff alleges no facts showing that a policy, custom, or practice of the City of New York contributed to a violation of her federal constitutional rights. Thus, the Court dismisses Plaintiff's claims under Section 1983 for failure to state a claim on which relief may be granted, *see* § 1915(e)(2)(B)(ii). The Court, however, grants Plaintiff leave to replead these claims in an amended complaint in which she names the City of New York (and not an agency of the City of New York) as a Defendant,[8] and in which she alleges facts sufficient to state a claim under Section 1983 against the City of New York.[9]

---

[8] This instruction also applies as to Plaintiff's claims to be asserted in her amended complaint under Title VII, the ADA, the Rehab Act, and the FMLA.

[9] Plaintiff may also assert, in her amended complaint, Section 1983 claims against individual state actors; she may name as Defendants, in her amended complaint, those individual state actors who were personally and directly involved in the violations of her federal constitutional rights. *See Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020). Individual liability is also possible under the FMLA against individual "employers," as defined by that

**F. Claims of retaliation under Title VII, the ADA, and the Rehab Act.**

The Court must further dismiss Plaintiff's claims of retaliation under Title VII, the ADA, the Rehab Act, and Section 1983. To state such a claim under Title VII, a plaintiff must allege facts showing that: "(1) [the] defendant[] discriminated—or took an adverse employment action—against [her], (2) 'because' [s]he has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90 (quoting 42 U.S.C. § 2000e-3(a)). "[F]or an adverse retaliatory action to be 'because' a plaintiff [opposed an unlawful employment practice], the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action. It is not enough that retaliation was a 'substantial' or 'motivating' factor in the employer's decision." *Id.* at 90-91 (internal quotation marks and citations omitted).

To state a claim of retaliation under either the ADA or the Rehab Act, a plaintiff must show: "(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action."[10] *Natofsky*, 921 F.3d at 353 (internal quotation marks and citation omitted). Such a causal connection may be shown either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant."

---

statute. *Graziadio*, 817 F.3d at 422-23. Thus, Plaintiff may further name, in her amended complaint, such individuals as Defendants.

[10] As with a claim of discrimination brought under the Rehab Act, with respect to a claim of retaliation under that statute, the plaintiff must also show that the relevant non-federal defendant receives federal funding. *Daly v. Westchester Cnty. Bd. of Legislators*, No. 19-CV-4642 (PMH), 2023 WL 4896801, at *4, 7-8 (S.D.N.Y. Aug. 1, 2023), *aff'd*, No. 23-1220-CV, 2024 WL 3264125 (2d Cir. July 2, 2024) (summary order).

*Id.* (internal quotation marks and citation omitted). But, to show a causal connection, "a plaintiff must show that 'but for' the protected activity, the adverse action would not have been taken." *Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 170 (2d Cir. 2024).

Plaintiff does not allege facts sufficient to show that she engaged in protected activity, including opposing violations of Title VII, the ADA, and/or the Rehab Act, and that, but for engaging in any such protected activity, she would not have suffered an adverse employment action, including termination. The Court therefore dismisses Plaintiff's claims of retaliation under Title VII, the ADA, and the Rehab Act for failure to state a claim on which relief may be granted, *see* § 1915(e)(2)(B)(ii), but grants Plaintiff leave to replead these claims in an amended complaint.[11]

**LEAVE TO AMEND**

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the United States Court of Appeals for the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)).

[11] The Court also grants Plaintiff leave to file an amended complaint in which she asserts claims of retaliation under Section 1983 against individual state actors named as Defendants. The pleading requirements for bringing such claims against individual Defendants mirror those discussed above with respect to a Title VII retaliation claim against an employer. *See Vega*, 801 F.3d at 91. Thus, Plaintiff also presently fails to state such a claim under Section 1983. *See* § 1915(e)(2)(B)(ii).

Because Plaintiff may be able to allege additional facts to state valid claims of retaliation and/or discrimination under federal law, the Court grants Plaintiff 30 days' leave to amend her complaint to detail such claims.

In the "Statement of Claim" section of the amended complaint form, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each Defendant. If Plaintiff has an address for any named Defendant, she must provide it. Plaintiff should include all of the information in the amended complaint that Plaintiff wants the Court to consider in deciding whether the amended complaint states a claim for relief. That information should include:

a) the names and titles of all relevant people;

b) a description of all relevant events, including what each Defendant did or failed to do, the approximate date and time of each event, and the general location where each event occurred;

c) a description of the injuries Plaintiff suffered; and

d) the relief Plaintiff seeks, such as money damages, injunctive relief, or declaratory relief.

Essentially, Plaintiff's amended complaint should tell the Court: who violated Plaintiff's federally protected rights; how, when, and where such violations occurred; and why Plaintiff is entitled to relief.

Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wants to include from the original complaint must be repeated in the amended complaint.

## G. SDNY Federal Pro Se Legal Assistance Project

The City Bar Justice Center ("CBJC") operates the SDNY Federal Pro Se Legal Assistance Project to assist parties representing themselves with civil cases filed in this court.[12] Appointments can be scheduled by completing the CBJC's intake form. If Plaintiff is unable to complete this form, or if she has questions about the form, she may call (212) 382-4794. A flyer with details is attached to this order.

## CONCLUSION

The Court grants Plaintiff 30 days' leave to file an amended complaint, as specified above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within 30 days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 1:25-CV-3109 (LLS). An amended complaint form and CBJC flyer are attached to this order. No summonses will issue at this time. If Plaintiff fails to comply within the time allowed, and she cannot show good cause to excuse such failure, the Court will dismiss this action. The Court will dismiss Plaintiff's federal-law claims for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). An additional effect of the dismissal of this action will be that the Court declines to consider, under its supplemental jurisdiction, Plaintiff's claims under state law, including her claims under the NYSHRL and the NYCHRL. *See* 28 U.S.C. § 1367(c)(3).

SO ORDERED.

Dated: October 19, 2026
New York, New York

Louis L. Stanton

Louis L. Stanton
U.S.D.J.

---

[12] The CBJC is a private organization that is not part of the court, and the CBJC's SDNY Federal Pro Se Legal Assistance Project cannot accept filings on behalf of the court.